IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RICKY CADDELL, | CIVIL ACTION 4:04-22027-CMC-TER |
| Plaintiff, | |
| v. | |
| | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The claimant, Ricky Caddell, filed applications for Disability Insurance Benefits (DIB) on July 10, 2001 (Tr. 36-42), and Supplemental Security Income (SSI) on August 10, 2001 (Tr. 226-229), alleging disability since August 9, 2000, due to pain in his back, feet and legs (Tr. 36-42, 226-229, 48). After his applications were denied at the initial and reconsideration levels of administrative

-2-

review, a hearing was held by the Administrative Law Judge, Frederick Christian, on January 30, 2004 (Tr. 236-263)   The Administrative Law Judge (ALJ), found in a decision dated March 22, 2004, that plaintiff was not disabled because he had the residual functional capacity to return to his past relevant work as a crane operator or newspaper inserter, as these jobs are generally performed in the national economy. (Tr. 12-18).  As the Appeals Council denied plaintiff's subsequent request for review, the ALJ's decision of March 22, 2004, was the Commissioner's "final decision" for purposes of judicial review under section 205(g) of the Act.  On August 27, 2004, plaintiff filed a complaint in this Court, alleging that the Commissioner's decision is contrary to law and not supported by substantial evidence.

## II.  FACTUAL BACKGROUND

The plaintiff was born on August 14, 1951, (Tr.36) and was 52 years of age on the date of his hearing before the ALJ (Tr. 461).  He has a seventh grade education and has past relevant work as a crane operator and newspaper inserter (Tr. 49, 54).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1)     The ALJ erred in determining that plaintiff is not disabled, which is in direct contradiction with the opinion of vocational expert, Joel D. Leonard, CRC, CVE.

(2)     The ALJ erred in determining that Mr. Caddell could return to his past relevant work as a crane operator or newspaper inserter when there is testimony that Mr. Caddell suffered from non-exertional impairments that preclude his return to his past relevant work.

(3) The ALJ erred in disregarding plaintiff's subjective complaints of disabling pain, particularly in light of his substantial work history.

(Plaintiff's brief).

In the decision of March 22, 2004, the ALJ found the following:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since August 9, 2000, the alleged onset date.

3. The claimant's degenerative disc disease, chronic lower back and right leg pain, borderline intellectual functioning and functional illiteracy are impairments considered "severe," based on the criteria in the Regulations at 20 CFR §§404.1520(b) and 416.920(b).

4. The claimant's severe impairments do not meet or medically equal the criteria of any listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's testimony was not wholly credible.

6. All the medical opinions regarding the severity of the claimant's impairments have been carefully considered (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity to perform a limited range of "medium" work, as defined in 20 CFR §§404.1567 and 416.967, restricted to simple and detailed (but not complex) tasks not requiring literacy.

8. The claimant is able to perform his past relevant work as a crane operator or newspaper inserter (20 CFR §§ 404.1565 and 416.965)

> 9. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§404.1520(f) and 416.920(f)).

(Tr. 17).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[1] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial

---

[1] Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein, in part.

On August 9, 2000, Alexander H. Cohen, M.D., examined plaintiff in relation to complaints of pain in the right hip, back and right shoulder following a fall at work. Dr. Cohen found plaintiff had limited range of motion of the right shoulder and lumbar spine, a slight abrasion and contusion of the right elbow, and paraspinal muscle spasms. X-rays of his right hip and lumbar spine were interpreted as normal. Dr. Cohen noted an assessment of contusions of the lumbosacral spine, right hip, right shoulder, and right elbow and prescribed Naprosyn, Flexeril, and physical therapy. He also excused plaintiff from work through August 14, 2000 (Tr. 115-117).

On August 14, 2000, Dr. Cohen noted that plaintiff was still "pretty sore," continued his prescriptions, and excused him from work (Tr. 113-114).

On August 28, 2000, Dr. Cohen found plaintiff had limited motion and pain with palpation in the lower back, right hip, and right shoulder. He prescribed Darvocet (in addition to Naprosyn and Flexeril), physical therapy, and home exercises, and gave plaintiff an excuse to remain out of work for another week. (Tr. 109-110).

On September 5, 2000, plaintiff told Dr. Cohen that physical therapy had been helpful, but that he was still having back pain (Tr. 107-108).

On September 8, 2000, Rakesh P. Chokshi, M.D., an orthopedist, examined plaintiff. Dr. Chokshi found plaintiff had well-preserved cervical motion; full motor strength, normal sensory function, and normal pulses in all extremities; and limited motion of the lumbar spine. He noted an impression of low back pain (Tr. 180-181).

On September 11, 2000, Dr. Cohen administered a "trigger point" injection to plaintiff in the lumbosacral area and continued his prescriptions for medication and physical therapy (Tr. 105).

On September 18, 2000, plaintiff reported improvement in his back pain to Dr. Cohen, but complained of increased pain after pushing a lawn mower across his yard. Dr. Cohen noted an assessment of improving lower back and neck sprains. He discontinued plaintiff's Darvocet, continued his prescriptions for Naprosyn, Flexeril, and physical therapy, and continued to excuse him from work (Tr. 103).

On September 25, 2000, plaintiff reported some improvement in his symptoms with physical therapy. Dr. Cohen noted that plaintiff was wearing a back brace and that his neck pain had lessened considerably. Dr. Cohen also noted he would "continue him out of work for another week" (Tr. 101).

On October 18, 2000, plaintiff told Dr. Cohen that his neck was "doing better" but that he still had lower back pain. Dr. Cohen prescribed work hardening and home exercises (Tr. 95).

On October 31, 2000, plaintiff reported improvement to Dr. Cohen, but complained of continuing back and neck pain (Tr. 93).

An MRI scan of plaintiff's lumbar spine, performed on November 3, 2000, showed small herniations at L2-3 and L3-4, and mild degenerative disc disease at L4-5 and L5-S1 (Tr. 184).

On November 13, 2000, Dr. Chokshi noted that plaintiff's MRI scan did not show significant stenosis or neural compression. Dr. Chokshi referred plaintiff for epidural steroid injections based on his complaints of continuing back and leg pain (Tr. 178).

On November 16, 2000, and December 6, 2000, Edward Wallace, M.D., administered epidural steroid injections to plaintiff (Tr. 125-128).

On December 19, 2000, Dr. Chokshi noted that plaintiff did not seem to be responding well to epidural steroid injections. He recommended conservative treatment (i.e., physical therapy, anti-inflammatory medication, and weight loss) (Tr. 177).

In a letter to plaintiff's worker's compensation insurance carrier, dated January 24, 2001, Dr. Chokshi stated that plaintiff had not responded to conservative treatment and was not a candidate for surgical treatment due to his multilevel disease process. He stated that he had discussed vocational changes with plaintiff, but was unable to provide his specific functional restrictions because he "[did] not know what his specific work [was]" (Tr. 199).

On January 24, 2001, Peter J. Spohn, M.D., examined plaintiff. Dr. Spohn noted findings of pain to palpation in the lumbar region; normal cervical and lumbar lordosis; negative straight leg-raising tests bilaterally; and normal strength, sensation, and reflexes in the lower extremities, with

the exception of slightly reduced (4+/5 strength) in the right psoas[2]. He rendered an impression of lumbar degenerative disc disease and recommended a high-resolution MRI scan and a bone scan. Dr. Spohn prescribed Celebrex, Darvocet, and Norflex and restricted plaintiff from work (Tr. 202-204).

An MRI scan of plaintiff's lumbar spine, performed on January 30, 2001, showed degenerative disc disease at L3-4, L4-5, and L5-S1; facet hypertrophy, bulging discs, and mild bilateral foraminal stenosis at all three levels; and mild spinal stenosis at L3-4. A bone scan, performed on the same date, showed increased activity in the region of the L3-4 vertebral body pedicle, probably related to facet hypertrophy and degenerative change (Tr. 182-183).

On February 13, 2001, after reviewing the results of plaintiff's MRI and bone scans, Dr. Spohn rendered an impression of aggravation of mild spinal stenosis of the lumbar spine. Dr. Spohn prescribed Darvocet and restricted plaintiff from work for one month. He also ordered nerve conduction studies of the lower extremities, the results of which were normal (Tr. 204).

On March 6, 2001, Dr. Spohn released plaintiff to "modified or light duty work" (Tr. 201).

On March 15, 2001, Dr. Spohn reported that plaintiff had reached maximum medical improvement, and that he had a five percent total body disability (Tr. 201).

On March 22, 2001, Dr. Spohn stated that plaintiff could perform the following work-related activities in spite of his impairment: occasionally lift/carry 20-50 pounds, and frequently lift/carry 10-25 pounds; stand for a total of 4-6 hours in an 8-hour day, and for 2-4 hours without interruption; walk for a total of 4-6 hours in an 8-hour day, and 2-4 hours without interruption; sit for a total of 4-6 hours in an 8-hour day, and for 2-4 hours without interruption. Dr. Spohn stated that plaintiff

---

[2] Psoas is defined as either of two internal muscles on the loin. MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY (1996).

could push/pull within his lift/carry limits, handle light objects, and travel as long as he took normal breaks "to mobilize" (Tr. 200).

On April 19, 2001, June 7, 2001, and July 26, 2001, Stuart C. King, M.D., administered epidural steroid injections to plaintiff (Tr. 129-138, 209-225).

On October 23, 2001, Dr. Spohn found plaintiff had full strength in the upper and lower extremities, with the exception of slightly reduced strength (4+/5) in the ankle and toe extensor muscles; normal sensation; no muscle spasms; positive straight leg-raising tests bilaterally; pain to palpation in the posterior cervical spine, right buttock, and right flank; and diffuse tenderness in the lumbar region. Dr. Spohn rendered an impression of chronic pain and possible spinal stenosis in the cervical and lumbar spine, and recommended MRI studies (Tr. 175-176).

On November 16, 2001, Robert W. Noelker, Ph.D., examined plaintiff at the request of the Commissioner "to assess his current intellectual, academic, and personality characteristics." Dr. Noelker found plaintiff was fully oriented, had relevant, coherent speech, and showed no evidence of illusions, delusions, hallucinations, or a "serious mood or anxiety disorder." He found plaintiff had a Verbal IQ of 79, a Performance IQ of 76, and a Full Scale IQ of 77, and that his achievement test scores were "so deficient that he should be considered to be functionally illiterate." He reported diagnoses of adjustment disorder with mixed anxiety and depression, borderline intellectual functioning, minimal organic brain dysfunction, functional illiteracy, low intellectual functioning, poor tolerance for stress and frustration, and multiple somatic problems. Dr. Noelker also concluded that plaintiff would not be able to appropriately handle any funds awarded to him (Tr. 139-143).

On December 7, 2001, Edward D. Waller, Ph.D., completed a Psychiatric Review Technique Form concerning plaintiff at the request of the Commissioner, based on a review of plaintiff's

records. Dr. Waller determined that plaintiff did not satisfy the criteria of any "listed" mental impairment and that his mental impairments (minimal organic dysfunction and adjustment disorder) caused "mild" restrictions in activities of daily living; "moderate" difficulties in social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 157-170).

In a Mental Residual Functional Capacity Assessment, completed December 7, 2001, Dr. Waller reported that plaintiff had no significant limitations in most areas of work-related mental functioning, no marked limitations, and moderate limitations in the following areas: understanding, remembering, and carrying out detailed instructions; maintaining concentration and attention for extended periods; and interacting appropriately with the general public. In a narrative summary, Dr. Waller explained that plaintiff could perform simple tasks without special supervision; would "likely miss" an occasional workday due to mental problems; could accept supervision, make simple decisions, and request assistance from others; and would "likely need" a job that did not require contact with the public. On May 20, 2002, W. Pearce McCall, Ph.D., concurred in Dr. Waller's assessment (Tr. 153-156).

On January 22, 2002, Charles C. Jones, M.D., assessed plaintiff's physical residual functional capacity at the request of the Commissioner, based on a review of plaintiff's records. Dr. Jones concluded that plaintiff could perform medium work, subject to some postural limitations. James R. Weston, M.D., concurred in Dr. Jones's assessment on June 10, 2002 (Tr. 145-152).

On February 26, 2002, Dr. Spohn noted that an MRI scan of plaintiff's lumbar spine, performed on January 14, 2002, showed mild disc degeneration with no disc herniation or significant stenosis; and that an MRI scan of his cervical spine, performed on the same date, showed

spondylosis with mild foraminal narrowing at C6-7 and a minimal central bulge at C3-4. Dr. Spohn stated that plaintiff was still at maximum medical improvement and that his "previous restrictions [were] permanent." He released plaintiff from his care (Tr. 173-174, 185-186).

On June 6, 2002, Joel D. Leonard, CVE, CRC, completed a vocational evaluation of plaintiff at the request of his attorney. Based on a review of plaintiff's records and plaintiff's description of his symptoms, Mr. Leonard concluded that plaintiff was "totally disabled" (Tr. 87-92).

Robert E. Brabham, Jr., MRC, the vocational expert (VE), testified at plaintiff's hearing that plaintiff's past job as a crane operator was semiskilled medium work and that his past job as a newspaper inserter was unskilled light work (Tr. 259-260).

## V. PLAINTIFF'S SPECIFIC ARGUMENTS

Plaintiff argues that the ALJ erred in disregarding his subjective complaints of disabling pain, particularly in light of his substantial work history.

Defendant argues that the "ALJ was not required to accept as true plaintiff's testimony that he experienced severe, unrelenting pain, that he had to lie down several times per day for pain relief, that he needed to use a cane to walk, etc., as plaintiff suggests." (Defendant's memorandum p. 15).

In assessing complaints of pain, disability, and limited function the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain [disability and limited function] alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, [disability and limited function] along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain, disability and limited function itself

or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

As to allegations of pain, the Fourth Circuit has often repeated that, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness and effusion." Craig, 76 F.3d at 592 (identifying two-step process by which ALJ must first determine if the claimant has demonstrated by objective medical evidence an impairment capable of causing the pain alleged and if so, must then assess the credibility of the claimant's subjective accounts of pain); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990).

The Commissioner has promulgated Ruling 96-7p to assist ALJ's in determining when credibility findings about pain and functional effect must be entered, and what factors are to be weighed in assessing credibility. The Ruling directs that,

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. *This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.*
>
> . . .

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> . . .
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Ruling 96-7p (emphasis added).

An ALJ's duty to make credibility findings about the plaintiff's statements about pain in a mental impairment case is just as important as in one alleging a physical impairment. See, e.g., Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999). A reviewing court cannot determine if findings are supported by substantial evidence unless the Commissioner explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (remand required based on failure to indicate weight given to medical reports). The Fourth Circuit has recognized that it is especially critical that the ALJ assess a plaintiff's credibility as to accounts of pain. As the court stated in Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) (citations omitted):

> [i]t is well settled that: '[t]he ALJ is required to make credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities . . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an

> important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process.

In finding claimant's testimony not credible, the ALJ fails to give specific findings supported by specific evidence of record. The ALJ more or less gave a conclusory statement. The ALJ stated as follows:

> The claimant testified at the hearing that he is capable of minimal reading and writing. He stated that he fell at work onto his right side, injuring his neck, arm, hip and back. He stated that he still has recurrent headaches and neck pain radiating to the right arm. He related that he is never pain-free and that he uses over-the-counter pain medications. The claimant estimated that he could sit up to 30 minutes at a time, stand for up to 15 minutes and walk no farther than one block.
>
> The undersigned finds that the testimony, particularly as it related to alleged physical limitations, was inconsistent with the weight of the medical evidence, was not wholly credible and therefore failed to support a finding of disability.
>
> . . . Although the evidence showed that the claimant has medically determinable impairments that could reasonably be expected to produce the pain and other symptoms alleged, the evidence did not support the claimant's allegations of the intensity and persistence of such pain and other symptoms.

(Tr. 15).

It may well be that substantial evidence exists to support the Commissioner's decision as to the credibility of the plaintiff in the instant case. The court will not, however, speculate on a barren record devoid of the appropriate administrative analysis. In the absence of any reason being identified by the ALJ for rejecting plaintiff's subjective accounts of pain, the court is unable to complete the review mandated by law. After finding the objective medical evidence could reasonably expect to produce the pain and other symptoms alleged, the ALJ summarily found the intensity and

persistence of such pain and other symptoms were not supported by the evidence. Therefore, the undersigned finds that the ALJ did not properly consider the plaintiff's subjective complaints of pain and did not give specific reasons for rejecting his testimony based on the evidence. Thus, the undersigned recommends that this case be remanded for proper consideration and explanation of findings as to the plaintiff's subjective complaints of pain considered with the medical evidence. On remand, the Commissioner can address these issues in accordance with Ruling 96-7p and <u>Craig v. Chater</u>, <u>supra</u>.

Plaintiff also argues that the ALJ erred in determining that he could return to his past relevant work as a crane operator or newspaper inserter when he did not account for plaintiff's testimony or the evidence in the record confirming severe mental deficits that would preclude his return to his past relevant work or any other work.

Defendant attempts to argue that "a claimant who works for years with his impairments without a worsening of his condition cannot claim them as disabling.' (Defendant's memorandum p. 16).

A review of the hearing decision reveals that the ALJ stated that the claimant has "no limitations of . . . activities of daily living. There are no limitations of claimant's social functioning. There are moderate limitations of the claimant's concentration, persistence or pace. There are no instances of deterioration or decompensation in work or work-like settings." (Tr. 15). However, as stated under the medical reports portion of this Report and Recommendation, on December 7, 2001, Dr. Waller completed a Psychiatric Review Technique Form concerning plaintiff at the request of the Commissioner. Dr. Waller determined that plaintiff did not satisfy the criteria of any "listed" mental impairment and that his mental impairments (minimal organic dysfunction and adjustment

disorder) caused "mild" restrictions in activities of daily living; "moderate" difficulties in social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 157-170). On May 20, 2002, W. Pearce McCall, Ph. D., concurred with Dr. Waller's assessment. (Tr. 157).

The ALJ did not discuss these findings in his hearing decision. Thus, it cannot be determined if plaintiff's anxiety and other personality problems as were reported by the doctors related to or worsened after his on the job injury. It is not clear why the ALJ disregarded these reports and found that plaintiff has no limitations as to daily living and social functioning when it was reported by Dr. Waller and agreed to by Dr. McCall that plaintiff has mild limitations as to daily living and moderate limitations as to social functioning. Additionally, on November 16, 2001, Dr. Noelker reported a diagnoses of adjustment disorder with mixed anxiety and depression, borderline intellectual functioning, minimal organic brain dysfunction, functional illiteracy, low intellectual functioning, poor tolerance for stress and frustration, and multiple somatic problems. (Tr. 139-143). Dr. Noelker stated that plaintiff had a variety of somatic problems related to his on the job injuries. The ALJ did not discuss these reports or how plaintiff's past work could be affected by his limitations since the ALJ's findings with regard to plaintiff's limitations as to social functioning and activities of daily living is in direct contradiction with the reports by the doctors as set out above. As a result of the ALJ's failure to explain his assessment of these opinions, the court is unable to ascertain whether the Commissioner's decision is supported by substantial evidence. Without explanation or reasoning by the ALJ in his decision to ignore the opinions of the psychology consultants, the undersigned cannot adequately address if there is substantial evidence to support the ALJ's decision. Accordingly, it is recommended that this case be remanded back to the Commissioner to give the proper weight

to these opinions of Dr. Noelker, Dr. Waller and Dr. McCall and any explanations for discounting them.

## VI.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. However, based on the decision submitted by the ALJ, the Court would have to speculate on the basis upon which his decision rests.

Accordingly, IT IS RECOMMENDED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

        Respectfully submitted,

        s/Thomas E. Rogers, III
        Thomas E. Rogers, III
        United States Magistrate Judge

July 26, 2005
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
